Dale Sundby and Edith Littlefield Sundby
Dale Sundby and Edith Littlefield Sundby, Trustees
5963 N. Golden Eagle Drive
Tucson, Arizona 85750
Phone: (619) 823-6333
Email: dale@sundby.email
Plaintiffs

**F I L E D**
CLERK, U.S. DISTRICT COURT

11/1/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY

*FEE PAID*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Dale Sundby and Edith Littlefield
Sundby; Dale Sundby and Edith
Littlefield Sundby, Trustees

Plaintiffs,

v.

Fidelity National Title Insurance
Company; and Does 1-X, Inclusive

Defendants.

Case No.: *8:22-cv-02005-JWH-KESx*

**COMPLAINT FOR:**

**(1) WRONGFUL FORECLOSURE;**

**(2) WRONGFUL FORECLOSURE, WITH FRAUD AND MALICE;**

**(3) AIDING AND ABETTING WRONGFUL FORECLOSURE, WITH FRAUD AND MALICE;**

**(4) CIVIL CONSPIRACY OF WRONGFUL FORECLOSURE, WITH FRAUD AND MALICE.**

**JURY TRIAL DEMANDED**

COMPLAINT                                1

Plaintiffs allege as follows:

## PARTIES

1.      Plaintiffs Dale Sundby and Edith Littlefield Sundby ("Sundbys"), 5963 N. Golden Eagle Drive, Tucson, Arizona 85750.

2.      Plaintiffs Dale Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 Dated: January 26, 1989  ("Family Trustees"), 5963 N. Golden Eagle Drive, Tucson, Arizona 85750.

3.      The Sundbys and Family Trustees are collectively referred to as "Plaintiffs"

4.      Defendant Fidelity National Title Insurance Company ("Fidelity"), 3210 El Camino Real, Suite 200, Irvine, California 92602.

5.      Defendants sued herein as DOES 1 through X ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe, and based on such information and belief, that each of the DOE Defendants is legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when the same are ascertained.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. §1332(a), the amount in controversy is greater than $75,000, not counting interest and costs of court.  Plaintiffs are citizens of the State of Arizona.  Fidelity is incorporated under the laws of the State of California, and in its most recent Statement of Information filed with the California Secretary of State lists the Irvine, California address in ¶ 4 as both the *Street Address of Principal Office in California* and *Mailing Address*.

**FACTS**

7.   Fidelity is a member company of Fidelity National Title Group.

8.   Fidelity National Title Group is a member of Fidelity National Financial.

9.   Fidelity National Financial, listed on the New York Stock Exchange, is the nation's largest group of title companies and title insurance underwriters.

10.   Fidelity National Financial revenues for the full year 2021 was in excess of $15 billion.

11.   Fidelity National Financial provision for title claim losses for the full year 2021 was less than 4 cents for each dollar of title insurance premium revenue.

12.   On June 29, 2017, Family Trustees signed a proposed NOTE SECURED BY A DEED OF TRUST ("Proposed Note") for a mortgage loan on the Sundbys' residence at 7740 Eads Avenue, La Jolla, California 92037 ("Property"), attached hereto as Exhibit 1.

13.   Family Trustees initialed the first page of the Proposed Note.

14.   "Lender" in the Proposed Note is a defined term in singular form.

15.   The Lender in the Proposed Note ("Proposed Lender") included several investor persons and entities with participation percentages.

16.   Paragraph 1 of the Proposed Note begins with the condition precedent; "In return for a loan that I have received".

17.   Paragraph 2 of the Proposed Note includes "Interest commences on 07/05/2017".

18.   The Proposed Note was altered ("Altered Note"), attached hereto as Exhibit 2.

19.   "Lender" in the Altered Note is a defined term in singular form.

20.   The Lender in the Altered Note ("Altered Lender") is not the Proposed Lender.

COMPLAINT                                           3

21. The Altered Lender included investors and participation percentages not in the Proposed Note.

22. The first page of the Altered Note did not include Family Trustees' initials.

23. Paragraph 1 of the Altered Note begins with the condition precedent; "In return for a loan that I have received".

24. Paragraph 2 of the Altered Note includes; "Interest commences on 07/07/2017".

25. The Altered Note loan ("Loan") was funded by the Altered Lender.

26. The Loan ESCROW CLOSING STATEMENT ("Closing Statement") is attached hereto as Exhibit 3.

27. The Proposed Lender did not make a loan.

28. California Civil Code Section 1587(c) states "A proposal is revoked by... the failure of the acceptor to fulfill a condition precedent to acceptance."

29. The Proposed Note is also referred to herein as the "Revoked Note".

30. On June 29, 2017, Family Trustees also signed a proposed DEED OF TRUST securing the Proposed Note ("Proposed DOT"), attached herein as Exhibit 4.

31. Family Trustees initialed the first page of the Proposed DOT.

32. The Proposed DOT Lender was the Proposed Lender.

33. Under the section GRANT IN TRUST the Proposed DOT includes "BORROWER, in consideration of the indebtedness herein recited".

34. The Proposed DOT was altered ("Altered DOT").

35. On July 7, 2017, the Altered DOT was recorded, DOC # 2017-0306159, attached hereto as Exhibit 5.

36. Borrower vesting in the Altered DOT included "as to Parcels, 1A, 1B and 2B".

COMPLAINT                                    4

37.    Borrower vesting in the Proposed DOT did not include "as to Parcels, 1A, 1B and 2B".

38.    Under the section GRANT IN TRUST the Altered DOT includes "BORROWER, in consideration of the indebtedness herein recited".

39.    The Trustee in the Proposed DOT is the same Trustee as in the Altered DOT ("DOT Trustee").

40.    The Proposed DOT is also referred to herein as the "Revoked DOT".

41.    Also on July 7, 2017, Fidelity issued a LOAN POLICY OF TITLE INSURANCE, Policy No. CA-FLVE-IMP-27307-1-17-00165714 ("Title Policy"), attached hereto as Exhibit 6.

42.    SCHEDULE A of the Title Policy states the same "10157" loan number and "$3,410.00" premium amount as on the Closing Statement.

43.    Like the Altered Note and Altered DOT, paragraph 1 "Name of Insured:" in SCHEDULE A of the Title Policy includes investors not in the Proposed Note and Proposed DOT.

44.    The Insured was the Altered Lender.

45.    Similar to the Altered DOT, paragraph 3 "Title is vested in:" in SCHEDULE A of the Title Policy includes "as to Parcel 1A, 1B, and 2B".

46.    Similar to the Altered Note and Altered DOT, paragraph 4 "Beneficiary:" in SCHEDULE A of the Title Policy includes investors not in the Proposed Note and Proposed DOT.

47.    Paragraph 5(a) under CONDITIONS of the Title Policy states; "Upon written request by the Insured, and subject to the options contained in Section 7 of these conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to

the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel."

48. Paragraph 6(a) under CONDITIONS of the Title Policy states; "In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option the name of the Insured for this purpose."

49. Paragraph 7 under CONDITIONS of the Title Policy states; "In case of a claim under this policy, the Company shall have the following additional options" which included under paragraph 7(a)(ii); "To purchase the Indebtedness" and "When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security."

50. In February 2019, Dale Sundby, Trustee initiated litigation ("Litigation") in federal court by filing a complaint ("Complaint"), which included the Proposed Lender investors and Altered Lender investors as defendants.

51. A First Amended Complaint ("FAC") was filed on May 8, 2019, attached herein as Exhibit 7.

52. The FAC included factual allegations that the Altered Note was not the Proposed Note.

53. The FAC included factual allegations that the Altered DOT was not the Proposed DOT.

54. The FAC included factual allegations that the note and deed of trust alterations had been made without Dale Sundby, Trustee's knowledge or consent.

55. The FAC prayer included "the Court make a finding and issue appropriate orders stating:

1      a. That the 2017 Altered Deed was void ab initio and has no affect.

2      b. That the 2017 Altered Note was void ab initio and has no affect."

3    56.    The Insured under the Title Policy tendered the Complaint to Fidelity

4  ("Tender"), and in May 2019, Fidelity accepted the Tender, attached herein as

5  Exhibit 8.

6    57.    Fidelity exercised its "right to select counsel of its choice" pursuant to

7  Paragraph 5(a) under CONDITIONS of the Title Policy.

8    58.    Fidelity exercised its "right to so prosecute or provide defense"

9  pursuant to Paragraph 6(a) under CONDITIONS of the Title Policy, as well as "the

10 right to use . . . the name of the Insured for this purpose."

11   59.    Fidelity selected counsel for the Insured ("Selected Counsel").

12   60.    The Title Policy gave Fidelity effective control over the Litigation.

13   61.    The Title Policy created the formation and operating mechanism for a

14 conspiracy between Fidelity, Selected Counsel, Insured, Proposed Lender, and

15 DOT Trustee to wrongfully foreclose on the Property.

16   62.    Fidelity directed Selected Counsel during the Litigation.

17   63.    Fidelity directed Insured during Litigation.

18   64.    Fidelity directed Proposed Lender during Litigation.

19   65.    Fidelity directed DOT Trustee during the Litigation.

20   66.    Fidelity plotted with Selected Counsel during the Litigation.

21   67.    Fidelity plotted with Insured during the Litigation.

22   68.    Fidelity plotted with Proposed Lender during the Litigation.

23   69.    Fidelity plotted with DOT Trustee during the Litigation.

24   70.    Fidelity knew that a mortgage is a contract.

25   71.    Fidelity knew a contract requires consideration to be valid.

26   72.    Fidelity knew that a contract that lacks consideration is void.

27   73.    Fidelity knew that Proposed Lender funding was a condition precedent

28 to the Proposed Note.

COMPLAINT                         7

74.    Fidelity knew the Proposed Lender failure to fund a loan statutorily revoked the Proposed Note.

75.    The FAC stated, and Fidelity knew, that prior to initiating the Litigation, Family Trustees rescinded the Proposed Note and Proposed DOT, "as well as any other document altered after being signed by the Trustees."

76.    Family Trustees' rescission letter is attached herein as Exhibit 9.

77.    Fidelity knew that California Civil Code Section 1688 states "A contract is extinguished by its rescission."

78.    Family Trustees made several cash-for-keys settlement offers during the litigation, all for less than the equity value in the Property ("Offers").

79.    None of the Offers were acknowledged.

80.    None of the Offers were responded to.

81.    In a summary judgment tentative ruling, the federal court announced its intention to find the Altered Note and Altered DOT void.

82.    Before the federal court issued a summary judgment order, Fidelity caused the Revoked DOT to be recorded even though it knew no loan was made pursuant to the Revoked Note.

83.    Before the federal court issued a summary judgment order, Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, and Proposed Lender plan to record the Revoked DOT even though Fidelity knew no loan was made pursuant to the Revoked Note.

84.    Before the federal court issued a summary judgment order, Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, and Proposed Lender plan to record the Revoked DOT even though Fidelity knew no loan was made pursuant to the Revoked Note.

85.    The Revoked DOT was recorded on September 11, 2020, DOC# 2020-0533193, attached herein as Exhibit 10.

COMPLAINT                                  8

86.   On September 15, 2020, in a summary judgment order, confirmed at final judgment, the federal court found the Altered Note and Altered DOT void.

87.   Pursuant to the Title Policy, Fidelity entered into an agreement ("Agreement") with the Insured to purchase any indebtedness in return for any mortgage or collateral security, acquiring potential financial gain for itself from a wrongful foreclosure against the Revoked DOT.

88.   The Agreement was communicated to the federal court.

89.   After the Agreement was communicated to the federal court, the federal court issued an order regarding a December 2020 mandatory settlement conference, "Client representatives for the parties no longer are required to participate."

90.   Fidelity Senior Claim Counsel actively participated in all mandatory settlement conferences.

91.   Fidelity caused the recording of a NOTICE OF DEFAULT ("NOD") as to the Revoked DOT in furtherance of its intention to wrongfully foreclose on the Property, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property (fraud), and intended to cause Plaintiffs injury (malice).

92.   Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclose on the Property by recording a NOD as to the Revoked DOT, all knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

93.   Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclose on the Property by recording a NOD as to the Revoked DOT, all knowing no loan was made pursuant to the Revoked Note; making the act an intentional

misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

94.    The NOD was recorded on April 15, 2021, attached herein as Exhibit 11.

95.    The NOD stated "past due payments plus permitted costs and expenses" of "$4,338,052.14 as of 4/14/2021" even though no loan was made pursuant to the Revoked Note.

96.    In July 2021, Plaintiffs received an appraisal valuing the Property at $7.5 million ("Appraisal 1"), attached hereto as Exhibit 12.

97.    On July 14, 2021, Fidelity and Selected Counsel received a copy of Appraisal 1.

98.    Also in July 2021, Plaintiffs received a second appraisal valuing the Property at $7.58 million ("Appraisal 2"), attached hereto as Exhibit 13.

99.    On July 20, 2021, Fidelity and Selected Counsel received a copy of Appraisal 2.

100.   Dale Sundby, Trustee made another cash-for-keys settlement offer for less than the equity value in the Property ("Offer").

101.   The Offer was not responded to.

102.   After receiving the two appraisals, Fidelity caused the recording of a NOTICE OF TRUSTEE'S SALE ("NOS") as to the NOD and Revoked DOT, in furtherance of its intent to wrongfully foreclosure on the Property, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

103.   After receiving the two appraisals, Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclose on the Property by recording a NOS as to the NOD and Revoked DOT, knowing no loan was made

pursuant to the Revoked Note; making it an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

104.   After receiving the two appraisals, Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclose on the Property by recording a NOS as to the NOD and Revoked DOT, knowing no loan was made pursuant to the Revoked Note; making it an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

105.   The NOS was recorded on July 23, 2021, attached herein as Exhibit 14, noticing a foreclosure sale date of August 25, 2021.

106.   The NOS stated an "unpaid balance and other reasonable estimated charges: $4,333,290.15" even though no loan was made pursuant to the Revoked Note.

107.   Fidelity caused the wrongful foreclosure sale to proceed, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

108.   Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to proceed with the wrongful foreclosure sale, knowing no loan was made pursuant to the Revoked Note; making it an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

109.   Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to proceed with the wrongful foreclosure sale, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

110.   The wrongful foreclosure sale did proceed on August 25, 2021.

111.   Fidelity caused the recording of a TRUSTEE'S DEED UPON SALE ("TD") after the wrongful foreclosure, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

112.   Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to record a TD after the wrongful foreclosure, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

113.   Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to record the TD after the wrongful foreclosure, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property, and intended to cause Plaintiffs injury.

114.   A TD was recorded on August 26, 2021, DOC# 2021-0607411, attached hereto as Exhibit 15.

115.   Fidelity stated in a court filing that it "took" the "actions" of "foreclosing on the Subject Property."

116.   Fidelity's wrongful foreclosure actions were despicable, driven by greed, intended to cause injury to the Sundbys, and done with a willful and knowing disregard of Plaintiffs' rights.

## FIRST CAUSE OF ACTION
### Wrongful Foreclosure

117.   The allegations made in paragraphs 1 through 116, inclusive, are incorporated as though fully set forth herein.

118.   Fidelity caused the wrongful foreclosure on the Property under a power of sale in the Revoked DOT, knowing no loan was made pursuant to the

Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property (fraud), and intended to cause Plaintiffs injury (malice).

119.   The foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

120.   Fidelity knew the foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

121.   California Civil Code Section 1587(c) states "A proposal is revoked by . . . the failure of the acceptor to fulfill a condition precedent to acceptance."

122.   California Civil Code Section 2920(a) states "A mortgage is a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession."

123.   "A contract requires consideration." *San Luis Obispo Local Agency Formation Com. v. City of Pismo Beach* (2021) 61 Cal.App.5th 595.

124.   "A contract requires consideration; 'a bargained-for exchange as formulated in the Restatement of Contracts. . . .' (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1248.) 'To constitute consideration, a performance or return promise must be bargained for . . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' (*Id.* at p. 1249, quoting Rest.2d Contracts, § 71.)" *Dobashi v. Goldstein* (2009) A120481.

125.   "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].) 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it....' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat.*

1  *Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], 'A void thing is as

2  no thing.'" *Yvanova v. New Century Mortgage Corp.* (2016) 365 P.3d 845.

3      126.   "The borrower owes money not to the world at large but to a

4  particular person or institution, and only the person or institution entitled to

5  *payment* may enforce the debt by foreclosing on the security." *Id*.

6      127.   The sale was wrongful because Family Trustees had rescinded the

7  Proposed Note and Proposed DOT.

8      128.   California Civil Code Section 1688 states "A contract is extinguished

9  by its rescission."

10      129.   Because the Proposed Lender never made a loan, there was no

11  obligation to tender any amounts as to the Revoked Note secured by the Revoked

12  DOT.

13      130.   Because no loan was made pursuant to the Revoked Note, there was no

14  material breach of any condition as to the Revoked Note secured by the Revoked

15  DOT.

16      131.   Plaintiffs were harmed by the wrongful foreclosure.

17      132.   The harm included the loss of Plaintiffs' $7.5 million Property.

18      133.   Fidelity's actions were a substantial factor in causing Plaintiffs' harm.

19

20                      **SECOND CAUSE OF ACTION**

21                 **Wrongful Foreclosure, With Fraud and Malice**

22      134.   The allegations made in paragraphs 1 through 133, inclusive, are

23  incorporated as though fully set forth herein.

24      135.   The Title Policy created a formation and operating mechanism for a

25  wrongful foreclosure on the Property under a power of sale in the Revoked DOT.

26      136.   The Agreement separately created a formation and operating

27  mechanism for a wrongful foreclosure on the Property under a power of sale in the

28  Revoked DOT.

COMPLAINT                          14

137.   Fidelity caused the wrongful foreclosure on the Property under a power of sale in the Revoked DOT, knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property (fraud), and intended to cause Plaintiffs injury (malice).

138.   "[M]alice is defined as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.' (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764] (*Sanborn*); see *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370 [7 Cal.Rptr.3d 216] (*Noel*).)" *Kachlon v. Markowitz (2008) 168 Cal.App.4th 316, 336..* Fidelity *lacked reasonable grounds for belief in the truth of* the Revoked DOT, NOD, NOS, and TD.

139.   The foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

140.   Fidelity knew the foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

141.   California Civil Code Section 1587(c) states "A proposal is revoked by . . . the failure of the acceptor to fulfill a condition precedent to acceptance."

142.   California Civil Code Section 2920(a) states "A mortgage is a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession."

143.   "A contract requires consideration." *San Luis Obispo Local Agency Formation Com. v. City of Pismo Beach* (2021) 61 Cal.App.5th 595.

144.   "A contract requires consideration; 'a bargained-for exchange as formulated in the Restatement of Contracts. . . .' (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1248.) 'To constitute consideration, a performance

COMPLAINT                                    15

or return promise must be bargained for . . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' (*Id.* at p. 1249, quoting Rest.2d Contracts, § 71.)" *Dobashi v. Goldstein* (2009) A120481.

145.   "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].) 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it....' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], 'A void thing is as no thing.'" *Yvanova v. New Century Mortgage Corp.* (2016) 365 P.3d 845.

146.   "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to *payment* may enforce the debt by foreclosing on the security." *Id.*

147.   The sale was wrongful because Family Trustees had rescinded the Proposed Note and Proposed DOT.

148.   California Civil Code Section 1688 states "A contract is extinguished by its rescission."

149.   Because the Proposed Lender never made a loan, there was no obligation to tender any amounts as to the Revoked Note secured by the Revoked DOT.

150.   Because no loan was made pursuant to the Revoked Note, there was no material breach of any condition as to the Revoked Note secured by the Revoked DOT.

151.   Fidelity's wrongful foreclosure actions were despicable, driven by greed, intended to cause injury to the Sundbys, and done with a willful and knowing disregard of Plaintiffs' rights.

152.   Plaintiffs were harmed by the wrongful foreclosure.

153.   The harm included the loss of Plaintiffs' $7.5 million Property.

154.   Fidelity's actions were a substantial factor in causing Plaintiffs' harm.

## THIRD CAUSE OF ACTION

### Aiding and Abetting Wrongful Foreclosure, With Fraud and Malice

155.   The allegations made in paragraphs 1 through 154, inclusive, are incorporated as though fully set forth herein.

156.   The Title Policy created a formation and operating mechanism for a wrongful foreclosure on the Property under a power of sale in the Revoked DOT.

157.   The Agreement separately created a formation and operating mechanism for a wrongful foreclosure on the Property under a power of sale in the Revoked DOT.

158.   Fidelity knew of, encouraged, and gave substantial assistance in the execution of a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclosure on the Property under a power of sale in the Revoked DOT, all knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property (fraud), and intended to cause Plaintiffs injury (malice).

159.   "[M]alice is defined as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.' (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764] (*Sanborn*); see *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370 [7 Cal.Rptr.3d 216] (*Noel*).)" *Kachlon v. Markowitz (2008) 168 Cal.App.4th 316, 336.*. Fidelity *lacked reasonable grounds for belief in the truth of* the Revoked DOT, NOD, NOS, and TD.

160.   The foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

161.   Fidelity knew the foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

162.   California Civil Code Section 1587(c) states "A proposal is revoked by . . . the failure of the acceptor to fulfill a condition precedent to acceptance."

163.   California Civil Code Section 2920(a) states "A mortgage is a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession."

164.   "A contract requires consideration." *San Luis Obispo Local Agency Formation Com. v. City of Pismo Beach* (2021) 61 Cal.App.5th 595.

165.   "A contract requires consideration; 'a bargained-for exchange as formulated in the Restatement of Contracts. . . .' (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1248.) 'To constitute consideration, a performance or return promise must be bargained for . . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' (*Id.* at p. 1249, quoting Rest.2d Contracts, § 71.)" *Dobashi v. Goldstein* (2009) A120481.

166.   "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].) 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it....' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], 'A void thing is as no thing.'" *Yvanova v. New Century Mortgage Corp.* (2016) 365 P.3d 845.

167. "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to *payment* may enforce the debt by foreclosing on the security." *Id*.

168. The sale was wrongful because Family Trustees had rescinded the Proposed Note and Proposed DOT.

169. California Civil Code Section 1688 states "A contract is extinguished by its rescission."

170. Because the Proposed Lender never made a loan, there was no obligation to tender any amounts as to the Revoked Note secured by the Revoked DOT.

171. Because no loan was made pursuant to the Revoked Note, there was no material breach of any condition as to the Revoked Note secured by the Revoked DOT.

172. Fidelity's wrongful foreclosure actions were despicable, driven by greed, intended to cause injury to the Sundbys, and done with a willful and knowing disregard of Plaintiffs' rights.

173. Plaintiffs were harmed by the wrongful foreclosure.

174. The harm included the loss of Plaintiffs' $7.5 million Property.

175. Fidelity's actions were a substantial factor in causing Plaintiffs' harm.

## FOURTH CAUSE OF ACTION

## **Civil Conspiracy of Wrongful Foreclosure, With Fraud and Malice**

176. The allegations made in paragraphs 1 through 175, inclusive, are incorporated as though fully set forth herein.

177. The Title Policy created a formation and operating mechanism for a wrongful foreclosure on the Property under a power of sale in the Revoked DOT.

178.   The Agreement separately created a formation and operating mechanism for a wrongful foreclosure on the Property under a power of sale in the Revoked DOT.

179.   Fidelity was aware of and agreed to cooperate with a Selected Counsel, Insured, Proposed Lender, and DOT Trustee scheme to wrongfully foreclosure on the Property under a power of sale in the Revoked DOT, all knowing no loan was made pursuant to the Revoked Note; making the act an intentional misrepresentation to deny Plaintiffs the right to the Property (fraud), and intended to cause Plaintiffs injury (malice).

180.   "[M]alice is defined as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.' (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413 [134 Cal.Rptr. 402, 556 P.2d 764] (*Sanborn*); see *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370 [7 Cal.Rptr.3d 216] (*Noel*).)" *Kachlon v. Markowitz (2008) 168 Cal.App.4th 316, 336.*. Fidelity *lacked reasonable grounds for belief in the truth of* the Revoked DOT, NOD, NOS, and TD.

181.   The foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

182.   Fidelity knew the foreclosure was wrongful because no loan was made pursuant to the Revoked Note.

183.   California Civil Code Section 1587(c) states "A proposal is revoked by . . . the failure of the acceptor to fulfill a condition precedent to acceptance."

184.   California Civil Code Section 2920(a) states "A mortgage is a contract by which specific property, including an estate for years in real property, is hypothecated for the performance of an act, without the necessity of a change of possession."

185.   "A contract requires consideration." *San Luis Obispo Local Agency Formation Com. v. City of Pismo Beach* (2021) 61 Cal.App.5th 595.

186.   "A contract requires consideration; 'a bargained-for exchange as formulated in the Restatement of Contracts. . . .' (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1248.) 'To constitute consideration, a performance or return promise must be bargained for . . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' (*Id.* at p. 1249, quoting Rest.2d Contracts, § 71.)" *Dobashi v. Goldstein* (2009) A120481.

187.   "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362 [233 Cal.Rptr. 923].) 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it....' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644 [117 P. 913].) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371 [55 P. 980], 'A void thing is as no thing.'" *Yvanova v. New Century Mortgage Corp.* (2016) 365 P.3d 845.

188.   "The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to *payment* may enforce the debt by foreclosing on the security." *Id.*

189.   The sale was wrongful because Family Trustees had rescinded the Proposed Note and Proposed DOT.

190.   California Civil Code Section 1688 states "A contract is extinguished by its rescission."

191.   Because the Proposed Lender never made a loan, there was no obligation to tender any amounts as to the Revoked Note secured by the Revoked DOT.

192.   Because no loan was made pursuant to the Revoked Note, there was no obligation to tender any amounts as to the Revoked Note secured by the Revoked DOT.

193.   Fidelity's wrongful foreclosure actions were despicable, driven by greed, intended to cause injury to the Sundbys, and done with a willful and knowing disregard of Plaintiffs' rights.

194.   Plaintiffs were harmed by the wrongful foreclosure.

195.   The harm included the loss of Plaintiffs' $7.5 million Property.

196.   Fidelity's actions were a substantial factor in causing Plaintiffs' harm.

## PRAYER
### First Cause of Action
### Wrongful Foreclosure

Plaintiffs pray for relief as follows:

1.   For $7.5 million and other compensatory damages to be proven at trial;

2.   For punitive damages;

3.   For costs of the suit;

4.   For such other and further relief as the Court deems just and proper.

### Second Cause of Action
### Wrongful Foreclosure; With Fraud and Malice

Plaintiffs pray for relief as follows:

1.   For $7.5 million and other compensatory damages to be proven at trial;

2.   For punitive damages;

3.   For costs of the suit;

4.   For such other and further relief as the Court deems just and proper.

### Third Cause of Action

**Aiding and Abetting Wrongful Foreclosure; With Fraud and Malice**

Plaintiffs pray for relief as follows:

1.  For $7.5 million and other compensatory damages to be proven at trial;

2.  For punitive damages;

3.  For costs of the suit;

4.  For such other and further relief as the Court deems just and proper.

### Fourth Cause of Action

**Civil Conspiracy of Wrongful Foreclosure; With Fraud and Malice**

Plaintiffs pray for relief as follows:

1.  For $7.5 million and other compensatory damages to be proven at trial;

2.  For punitive damages;

3.  For costs of the suit;

4.  For such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury.

Dated:      November 1, 2022

By:  */s/ Dale Sundby*
Dale Sundby
Plaintiff

By:  */s/ Edith Littlefield Sundby*
Edith Littlefield Sundby
Plaintiff

By:  */s/ Dale Sundby, Trustee*
Dale Sundby, Trustee
Plaintiff

By:  */s/ Edith Littlefield Sundby, Trustee*
Edith Littlefield Sundby, Trustee
Plaintiff

COMPLAINT                                         23

# Exhibit 1

Complaint

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10157**          Date: **06/27/2017**          Calabasas, California
**Marquee Funding Group, Inc. BRE #01870113 & NMLS #267442**
**Ryan Joe Solovy BRE #01876915 & NMLS #303993**

**7740-7746 Eads Avenue La Jolla CA 92037**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$3,160,000.00** (this amount will be called "principal"), plus interest, to the order of **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.147% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% interest and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 15.823% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.
Interest commences on **07/05/2017**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.
Interest will be charged on unpaid principal until the full amount of principal has been paid.
I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☒ Interest Only   ☐ Fully Amortized   ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 1 | July 6, 2018 | 9.50% | $3,185,016.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note.  If on **07/06/2018** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.
I will make my payments payable to **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.
In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.
**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

10157/Sundby Trust 4
Page 1 of 3

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10157**                    Date: **06/27/2017**                    Calabasas, California
**Marquee Funding Group, Inc. BRE #01870113 & NMLS #267442**
**Ryan Joe Solovy BRE #01876915 & NMLS #303993**

**7740-7746 Eads Avenue La Jolla CA 92037**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$3,160,000.00** (this amount will be called "principal"), plus interest, to the order of **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.147% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 15.823% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/05/2017**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☒ Interest Only    ☐ Fully Amortized    ☐ Other
I will make my payments each month as follows:

| | Payment Start Date | Interest Rate | |
|---|---|---|---|
| 1 | July 6, 2018 | 9.50% | $3,185,016.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **07/06/2018** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not

prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Six (6) month(s) of the term, a prepayment penalty equal to the difference between Six (6) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. Subject to Provisions of the security interest permitting partial releases and reconveyances upon sale of a Condo (as defined in the Security Instrument). If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. USE OF PROCEEDS

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:

Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:

_____ TTEE 6/29/17 _____
Borrower    Dale H. Sundby, Trustee          Date

_____  _____
Borrower    Edith Littlefield Sundby, Trustee     Date

prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Six (6) month(s) of the term, a prepayment penalty equal to the difference between Six (6) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. Subject to Provisions of the security interest permitting partial releases and reconveyances upon sale of a Condo (as defined in the Security Instrument). If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. USE OF PROCEEDS

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan
Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

_Edith Littlefield Sundby TTEE    6/29/2017_

| Borrower | Dale H. Sundby, Trustee | Date | Borrower | Edith Littlefield Sundby, Trustee | Date |

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same


_____     _____

_____     _____


**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust
securing same for cancellation, before reconveyance will be made.

# Exhibit 2

Complaint

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10157**          Date: **06/27/2017**                                    Calabasas, California
**Marquee Funding Group, Inc. BRE #01870113 & NMLS #267442**
**Ryan Joe Solovy BRE #01876915 & NMLS #303993**
**7740-7746 Eads Avenue La Jolla CA 92037**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$3,160,000.00** (this amount will be called "principal"), plus interest, to the order of **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.148% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% interest and Steven M. Cobin and Susan L. Cobin, Trustees of the Cobin Family Trust Dated March, 9th 1984, as to an undivided 7.911% interest and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 7.911% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.
Interest commences on **07/07/2017**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.
Interest will be charged on unpaid principal until the full amount of principal has been paid.
I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only    ☐ Fully Amortized    ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 1 | July 8, 2018 | 9.50% | $3,185,016.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **07/08/2018** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.
I will make my payments payable to **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.
In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.
**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not

ORIGINALS

prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Six (6) month(s) of the term, a prepayment penalty equal to the difference between Six (6) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. Subject to Provisions of the security interest permitting partial releases and reconveyances upon sale of a Condo (as defined in the Security Instrument). If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. USE OF PROCEEDS

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan
Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

**Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:**

Borrower    Dale H. Sundby, Trustee    6/29/17    Date

**Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:**

Borrower    Edith Littlefield Sundby, Trustee    Date

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **10157**          Date: **06/27/2017**                                    Calabasas, California

**Marquee Funding Group, Inc. BRE #01870113 & NMLS #267442**
**Ryan Joe Solovy BRE #01876915 & NMLS #303993**
**7740-7746 Eads Avenue La Jolla CA 92037**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$3,160,000.00** (this amount will be called "principal"), plus interest, to the order of **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.148% interest and Andres Salsido, Trustee of the Andres Sallsido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% interest and Steven M. Cobin and Susan L. Cobin, Trustees of the Cobin Family Trust Dated March, 9th 1984, as to an undivided 7.911% interest and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 7.911% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/07/2017**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are  ☑ Interest Only    ☐ Fully Amortized     ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 1 | July 8, 2018 | 9.50% | $3,185,016.67 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **07/08/2018** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$0.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not

Applied Business Software, Inc. (800) 833-3343
Note Secured by Deed of Trust

ORIGINALS

10157/Surdby Trust 4
Page 1 of 3

prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **If this loan is paid off or refinanced during the first Six (6) month(s) of the term, a prepayment penalty equal to the difference between Six (6) month(s) of interest and the date of prepayment shall be due tendered.**

## 6. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 8. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. Subject to Provisions of the security interest permitting partial releases and reconveyances upon sale of a Condo (as defined in the Security Instrument). If the borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

## 9. USE OF PROCEEDS

Loan Proceeds are intended to be used primarily for business and commercial purpose and are not intended to be used for personal, family, or household purpose or in any manner which may result in the loan
Transaction not being exempt from Truth in Lending Act (TILA), 15 U.S.C.A 1602 (h) or any similar or applicable consumer lending laws.

Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:

Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989 by:

_____                    _____  6/29/2017
Borrower    Dale H. Sundby, Trustee    Date    Borrower    Edith Littlefield Sundby, Trustee    Date

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:


all beneficial interest under the within Note, without recourse, and Deed of Trust securing same


_____    _____

_____    _____


**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

# Exhibit 3

Complaint

# ESCROW CLOSING STATEMENT
**Marquee Funding Group, Inc.**
**24025 Park Sorrento, Suite #150, Calabasas CA 91302**

Escrow Number:  **10157**
Escrow Officer:  **Megan Lagerson**
Date Recorded:  **07/07/2017**

Borrower:  **Dale H. Sundby, Trustee and Edith Littlefield Sundby, Trustee**

Property:  **7740-7746 Eads Avenue La Jolla CA 92037**

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Funds Deposited To Escrow** | | |
| Jeffrey Myers  (7/6/2017 44.15%) | | $1,395,000.00 |
| Andres Salsido, Trustee  (7/7/2017 18.99%) | | $600,000.00 |
| Steven M. Cobin, Trustee  (7/5/2017 7.91%) | | $250,000.00 |
| Equity Trust Company  Custodian FBO Steven M. Cobin Traditional  (7/7/2017 7.91%) | | $250,000.00 |
| Fasack Investments LLC  (7/6/2017 7.44%) | | $235,000.00 |
| Benning Management Group 401K  (7/7/2017 3.80%) | | $120,000.00 |
| Christopher Myers  (7/7/2017 3.80%) | | $120,000.00 |
| Vicki McCarty  (7/7/2017 1.58%) | | $50,000.00 |
| Todd B. Cobin, Trustee  (7/6/2017 1.58%) | | $50,000.00 |
| Dolores Thompson  (7/7/2017 1.58%) | | $50,000.00 |
| Kimberly Gill Rabinoff  (7/7/2017 1.27%) | | $40,000.00 |
| | | |
| **Demands Paid Through Escrow** | | |
| Platinum Loan Servicing, Inc. | | |
| Principal | $2,600,000.00 | |
| Interest From 04/01/2017 to 07/07/2017 | $70,777.78 | |
| Reconveyance | $45.00 | |
| | $2,670,822.78 | $2,670,822.78 |
| | | |
| **Payments Made on Authorization of Borrower** | | |
| Delinquent Property Taxes 1st & 2nd  Installment 2016-2017 (APN: 350-312-09-00) | | $3,478.58 |
| Delinquent Property Taxes 1st & 2nd Installment 2016-2017 (APN: 350-312-10-00) | | $38,030.91 |
| | | |
| **Cost and Expenses** | | |
| Recording fees | | $76.00 |
| Sub Escrow Fee- Title | | $90.00 |
| Document Prep Fee | | $500.00 |
| 2 Wire  Fee | | $50.00 |
| Interest from 07/07/2017 to 07/08/2017 @ $833.89/day | | $833.89 |
| Title Insurance- Fidelity | | $3,410.00 |
| | | |
| **Other Items Paid Through Escrow** | | |
| Broker's Commission | | $40,000.00 |
| Lender's Commission | | $0.00 |
| Prepaid Payments | | $275,183.37 |
| | | |
| **Check To Borrower** | | $127,524.47 |
| | | |
| **Totals** | $3,160,000.00 | $3,160,000.00 |

# Exhibit 4

Complaint

Recording Requested By
Marquee Funding Group, Inc. BRE #01870113
& NMLS #267442
Ryan Joe Solovy BRE #01876915 &
NMLS #303993

When Recorded Mail To
Marquee Funding Group, Inc.
24025 Park Sorrento, Suite #150,
Calabasas  CA  91302

Title Order No. 00165714-994-VNO-CH

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **10157**

This Deed of Trust, made this **27th** day of **June 2017**, among the Trustor, **Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989** (herein "Borrower"), **Platinum Loan Servicing, Inc.** (herein "Trustee"), and the Beneficiary, **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.147% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% and Equity Trust Company Custodian FBO Steven M. Cobin Traditional  IRA, as to an undivided 15.823% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 3.797% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**GRANT IN TRUST**

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **San Diego**, State of California: **SEE EXHIBIT "A" ATTACHED HERE TO AND MADE A PART HEREOF.**

**APN: 350-312-09-00 & 350-312-10-00**, which has the address of **7740-7746 Eads Avenue La Jolla CA 92037** (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **06/27/2017**, in the principal sum of U.S. **$3,160,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 1 of 6

**Recording Requested By**
Marquee Funding Group, Inc. BRE #01870113
& NMLS #267442
Ryan Joe Solovy BRE #01876915 &
NMLS #303993

**When Recorded Mail To**
Marquee Funding Group, Inc.
24025 Park Sorrento, Suite #150,
Calabasas  CA  91302

Title Order No. 00165714-994-VNO-CH

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **10157**

   This Deed of Trust, made this **27th** day of **June 2017**, among the Trustor, **Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989** (herein "Borrower"), **Platinum Loan Servicing, Inc.** (herein "Trustee"), and the Beneficiary, **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.147% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 15.823% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (herein "Lender").

   The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**GRANT IN TRUST**

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of  **San Diego**, State of California: **SEE EXHIBIT "A" ATTACHED HERE TO AND MADE A PART HEREOF.**

**APN: 350-312-09-00 & 350-312-10-00**, which has the address of **7740-7746 Eads Avenue La Jolla CA 92037** (herein "Property Address");

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **06/27/2017**, in the principal sum of U.S. **$3,160,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 1 of 6

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join  in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice

provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the

Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**26. Partial Release.** Beneficiary shall cooperate with Trustor, at no cost or expense to Beneficiary, in converting the Property into a two unit condominium ("Condos"), plus any common area lot. Such cooperation shall include, without limitation, signing the condominium map and amending this Deed as necessary to implement the condominium plan, provided any such cooperation is conditioned upon Beneficiary retaining a first priority lien on the Condos.

At any time when an unrescinded Notice of Default of this Deed of Trust is not of record, on and upon written request of the Trustor, a partial reconveyance from the lien or charge of the Deed of Trust shall be granted by the Beneficiary (through the Trustee), subject to the following:

(1) Trustor shall, at Trustor's sole expense, satisfy all subdivision laws and ordinances of the State of California, and local ordinances under it, arising in connection with the reconveyance.

(2) No parcel shall be reconveyed if, by reason of the reconveyance, the portion of the Property remaining subject to this Deed would be left without legal access to a public street or road.

(3) No reconveyance shall be of less than an entire parcel and shall include the right to full use and enjoyment of any common area facilities.. The Trustor shall have the right to request that the Beneficiary release and reconvey only individual Condos as they are sold to bona fide purchasers. Trustor shall pay a release price equal to the greater of (i) the net sales proceeds from the sale of a Condo (after payment of commissions and closing costs) or (ii) in the case of the Condo which includes the front residence at 7740 Eads Avenue, La Jolla, CA 92037, $3,000,000; and in the case of the Condo which includes the rear residence at 7744 Eads Avenue, La Jolla, CA 92037, $1,000,000, or such lesser amounts as may be agreed in writing by Beneficiary. Provisions above notwithstanding, Beneficiary shall release and reconvey the Deed from any common areas as shown on the condominium plan, upon transfer of the same to a homeowners association serving the Condos.

---

**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

---

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____, Page(s) _____, Instrument No._____, Official Records of County Recorder of _____ County, California. The original Trustor

_____ and the original

Trustee _____ and

the original Beneficiary _____

Mail to: _____

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

Borrower      Dale H. Sundby, Trustee          TTEE  6/28/17      Date

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

Borrower      Edith Littlefield Sundby, Trustee          Date

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ~~California~~ Arizona (SW)

County of Pima

On June 28th, 2017 before me, Seth Kuhlmann, Notary Public ,

personally appeared Dale Sundby

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

OFFICIAL SEAL
SETH KUHLMANN
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. June 2, 2020

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Signature of Beneficiary (the "LENDER")          Date          Signature of Beneficiary (the "LENDER")          Date

When recorded, mail to

Att: _____

Applied Business Software, Inc  (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 6 of 6

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

_Edith Littlefield Sundby, Trustee_ 6/29/2017

| Borrower | Dale H. Sundby, Trustee | Date | Borrower | Edith Littlefield Sundby, Trustee | Date |

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___San Drego___

On __6/29/2017__ before me, __Del Lau, Notary Public__,

personally appeared __EDITH LITTLEFIELD SUNDBY__

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

DEL LAU
Commission No. 2171079
NOTARY PUBLIC · CALIFORNIA
SAN DIEGO COUNTY
Commission Expires November 7, 2020
(Seal)

---

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

| Signature of Beneficiary (the "LENDER") | Date | Signature of Beneficiary (the "LENDER") | Date |

When recorded, mail to

Att: _____

Applied Business Software, Inc  (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 6 of 6

# Exhibit 5

Complaint

**'Fidelity-Sherman Oaks**

**Recording Requested By**
Marquee Funding Group, Inc. BRE #01870113
& NMLS #267442
Ryan Joe Solovy BRE #01876915 &
NMLS #303993

**When Recorded Mail To**
Marquee Funding Group, Inc.
24025 Park Sorrento, Suite #150,
Calabasas  CA  91302

Title Order No. 00165714-994-VNO-CH

DOC#  2017-0306159

Jul 07, 2017  08:00 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:   $45.00

PAGES: 10

Space above this line for recorder's use

# DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **10157**
   This Deed of Trust, made this **27th** day of **June 2017**, among the Trustor, **Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust No. 1989-1 dated January 26, 1989, as to Parcels, 1A, 1B and 2B** (herein "Borrower"), **Platinum Loan Servicing, Inc.** (herein "Trustee"), and the Beneficiary, **Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.148% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015 as to an undivided 18.987% and Steven M. Cobin and Susan L. Cobin, Trustees of the Cobin Family Trust Dated March, 9th 1984, as to an undivided 7.911% interest and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 7.911% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided 1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest** (herein "Lender").

   The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**GRANT IN TRUST**
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of  **San Diego**, State of California: **SEE EXHIBIT "A" ATTACHED HERE TO AND MADE A PART HEREOF. APN: 350-312-09-00 & 350-312-10-00**, which has the address of **7740-7746 Eads Avenue La Jolla CA 92037** (herein "Property Address");

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **06/27/2017**, in the principal sum of U.S. **$3,160,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 1 of 6

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any  part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any  act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and  shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Platinum Loan Servicing Inc., 24025 Park Sorrento, Suite #150, Calabasas CA 91302** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice

provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest  therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the

Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**26. Partial Release.** Beneficiary shall cooperate with Trustor, at no cost or expense to Beneficiary, in converting the Property into a two unit condominium ("Condos"), plus any common area lot. Such cooperation shall include, without limitation, signing the condominium map and amending this Deed as necessary to implement the condominium plan, provided any such cooperation is conditioned upon Beneficiary retaining a first priority lien on the Condos.

At any time when an unrescinded Notice of Default of this Deed of Trust is not of record, on and upon written request of the Trustor, a partial reconveyance from the lien or charge of the Deed of Trust shall be granted by the Beneficiary (through the Trustee), subject to the following:

(1)  Trustor shall, at Trustor's sole expense, satisfy all subdivision laws and ordinances of the State of California, and local ordinances under it, arising in connection with the reconveyance.

(2)  No parcel shall be reconveyed if, by reason of the reconveyance, the portion of the Property remaining subject to this Deed would be left without legal access to a public street or road.

(3)  No reconveyance shall be of less than an entire parcel and shall include the right to full use and enjoyment of any common area facilities.. The Trustor shall have the right to request that the Beneficiary release and reconvey only individual Condos as they are sold to bona fide purchasers. Trustor shall pay a release price equal to the greater of (i) the net sales proceeds from the sale of a Condo (after payment of commissions and closing costs) or (ii) in the case of the Condo which includes the front residence at 7740 Eads Avenue, La Jolla, CA 92037, $3,000,000; and in the case of the Condo which includes the rear residence at 7744 Eads Avenue, La Jolla, CA 92037, $1,000,000, or such lesser amounts as may be agreed in writing by Beneficiary. Provisions above notwithstanding, Beneficiary shall release and reconvey the Deed from any common areas as shown on the condominium plan, upon transfer of the same to a homeowners association serving the Condos.

---

**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book _____ , Page(s) _____ , Instrument No._____ , Official Records of County Recorder of _____ County, California. The original Trustor

_____ and the original

Trustee _____ and
the original Beneficiary

_____

Mail to:

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

_____ *TTEE* 6/28/17

Borrower    Dale H. Sundby, Trustee                    Date

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

SIGNED IN COUNTERPART

Borrower    Edith Littlefield Sundby, Trustee        Date

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ~~California~~ Arizona (SK)
County of Pima

On June 28th, 2017 _____ before
me, Seth Kuhlmann, Notary Public
personally appeared
Dale H Sundby

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

_____
Signature

OFFICIAL SEAL
SETH KUHLMANN
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. June 2, 2020

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all
other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said
note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now
held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____    _____    _____    _____
Signature of Beneficiary (the "LENDER")    Date    Signature of Beneficiary (the "LENDER")    Date

When recorded, mail to

Att: _____

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

SIGNED IN COUNTERPART
_____

Borrower   Dale H. Sundby, Trustee         Date

Dale H. Sundby and Edith Littlefield Sundby, Trustees of
Declaration of Trust, Trust No. 1989-1 dated January 26, 1989
by:

_____

Borrower   Edith Littlefield Sundby, Trustee    Date

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ___San Diego_____

On ___6/29/2017_____ before
me,___Del Lau___, Notary Public_____
personally appeared
   EDITH LITTLEFIELD SUNDBY_____

_____

_____
_____
_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

_____
Signature

```
            DEL LAU
     Commission No. 2171079
 NOTARY PUBLIC - CALIFORNIA
       SAN DIEGO COUNTY
Commission Expires November 7, 2020
            (Seal)
```

## REQUEST FOR FULL RECONVEYANCE

   The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all
other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said
note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now
held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          _____
Signature of Beneficiary (the "LENDER")      Date      Signature of Beneficiary (the "LENDER")      Date

When recorded, mail to

Att: _____

Applied Business Software, Inc. (800) 833-3343
Deed of Trust

10157/Sundby Trust 4
Page 6 of 8

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1A: TAX 09

ALL THAT PORTION OF LOTS 31 AND 32, IN BOOK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MARCH 22, 1887, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 31 DISTANT THEREON SOUTH 74° 33' 30" WEST, 92.88 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT; THENCE SOUTH 74° 33' 30" WEST ALONG SAID SOUTHERLY LINE, 47.36 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 15° 23' 30" WEST ALONG THE WESTERLY LINE OF SAID LOT 31, A DISTANCE OF 22.04 FEET TO A POINT DISTANT SOUTH 15° 23' 30" EAST 28.0 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 32; THENCE NORTH 74° 33' 45" EAST, 24.36 FEET; THENCE NORTH 44° 33' 45" 26.55 FEET TO A POINT BEARING NORTH 15° 25' WEST FROM THE POINT OF BEGINNING THENCE SOUTH 15° 25' EAST PARALLEL WITH THE EASTERLY LINE OF SAID LOTS, 35.31 FEET TO THE POINT OF BEGINNING.

PARCEL 2A:

ALSO AN EASEMENT AND RIGHT OF WAY FOR THE PURPOSES OF CONSTRUCTING AND MAINTENANCE OF A WATER SERVICE PIPE LINE AND OTHER UTILITIES AND ACROSS THE SOUTHERLY 2 FEET OF THE EASTERLY 92.88 FEET OF SAID LOT 31.

EXCEPTING FROM THE ABOVE DESCRIBED PROPERTY AN EASEMENT FOR RIGHT OF INGRESS AND EGRESS OVER THAT PORTION OF THE NORTHWESTERLY 2.5 FEET HEREOF, BEING IN SAID LOT 32 SAID STRIP EXTENDING SOUTHWESTERLY FROM THE EASTERLY LINE OF SAID PROPERTY TO A TERMINATION IN THE SOUTHERLY LINE OF SAID LOT 32.

PARCEL 3A:

GRANTING ALSO AN EASEMENT FOR RIGHT OF INGRESS AND EGRESS OVER AND ACROSS A STRIP OF LAND 5 FEET WIDE, BEING 2.5 FEET ON EACH SIDE OF A CENTER LINE DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 32; THENCE SOUTH 74° 33' 45" WEST ALONG THE SOUTHERLY LINE OF SAID LOT 32 A DISTANCE OF 60 FEET; THENCE NORTH 60° 26' 15" WEST 19 FEET; THENCE SOUTH 74° 33' 45" WEST 14 FEET; THENCE SOUTH 44° 33' 45" WEST TO THE SOUTHERLY LINE OF SAID LOT 32, SAID EASEMENT TERMINATING IN THE SOUTHERLY LINE OF SAID LOT 32.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE 2.5 FEET STRIP RESERVED AS DESCRIBED ABOVE.

EXCEPTING AND GRANTING AN EASEMENT TWO FEET IN WIDTH, 1 FEET ON EACH SIDE OF THE EXISTING SEWER LATERALS AS NOW LOCATED ON SAID LOTS 31 AND 32 TO SERVE THE EXISTING BUILDINGS.

PARCEL 1B: TAX 10

THAT PORTION OF LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 22, 1887, DESCRIBED AS FOLLOWS:

## EXHIBIT A
### (Continued)

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 31; THENCE ALONG THE NORTHERLY LINE
OF SAID LOT 31, SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00 FEET; THENCE
SOUTH 74° 33' 45" WEST 14.00 FEET; THENCE SOUTH 44° 33' 45" WEST 6.28 FEET TO THE MOST NORTHERLY
CORNER OF THAT PARCEL OF LAND DESCRIBED IN DEED TO IRENE B. O'BRIEN, RECORDED MARCH 8, 1949
AS DOCUMENT NO. 20514, IN BOOK 3133, PAGE 175 OF OFFICIAL RECORDS; THENCE ALONG THE
EASTERLY LINE OF SAID LAND SOUTH 15° 25' EAST 35.31 FEET TO THE SOUTHERLY LINE OF SAID LOT 31;
THENCE ALONG SAID SOUTHERLY LINE NORTH 74° 33' 30" EAST 92.88 FEET TO THE SOUTHEASTERLY
CORNER OF SAID LOT 31; THENCE ALONG THE EASTERLY LINE OF SAID LOT NORTH 15° 25' WEST 25.01
FEET TO THE POINT OF BEGINNING.

PARCEL 2B: TAX 10

THAT PORTION OF LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY
OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF
THE COUNTY RECORDER OF SAN DIEGO COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 31; THENCE ALONG THE NORTHERLY LINE
OF SAID LOT 31, SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00 FEET; THENCE
SOUTH 74° 33' 45" WEST 14.00 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 44° 33' 45" WEST 6.28
FEET TO THE MOST NORTHERLY CORNER OF THAT PARCEL OF LAND DESCRIBED IN DEED TO IRENE B.
O'BRIEN RECORDED MARCH 8, 1949 AS DOCUMENT NO. 20514 IN BOOK 3133, PAGE 175 OF OFFICIAL
RECORDS; THENCE ALONG THE NORTHWESTERLY AND NORTHERLY BOUNDARY OF SAID O'BRIEN'S
LAND SOUTH 44° 33' 45" WEST 26.55 FEET AND SOUTH 74° 33' 45" WEST, 24.36 FEET TO THE WESTERLY LINE
OF SAID LOT 31; THENCE ALONG SAID WESTERLY LOT LINE AND THE WESTERLY LINE OF SAID LOT 32;
NORTH 15° 23' 30" WEST 28.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 32; THENCE ALONG THE
NORTHERLY LINE OF SAID LOT 32 NORTH 74° 34' EAST 52.78 FEET TO A LINE WHICH BEARS NORTH 15° 25'
WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 15° 25' EAST 11.58 FEET TO THE TRUE POINT
OF BEGINNING.

PARCEL 3B:

AN EASEMENT FOR INGRESS AND EGRESS TO BE USED IN COMMON WITH OTHERS OVER A STRIP OF
LAND 5 FEET WIDE IN LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO,
COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE
OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 22, 1887, THE CENTER LINE OF SAID
STRIP BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 32; THENCE ALONG THE COMMON LINE
BETWEEN SAID LOTS 31 AND 32 SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00
FEET; THENCE SOUTH 74° 33' 45" WEST 14.00 FEET; THENCE SOUTH 44° 33' 45" WEST TO THE SOUTHERLY
LINE OF SAID LOT 32, SAID STRIP BEGINNING IN THE EASTERLY LINE OF SAID LOTS 31 AND 32 AND
ENDING IN SAID SOUTHERLY LINE OF LOT 32.

EXCEPTING FROM SAID STRIP THAT PORTION LYING WITHIN THE LAND CONVEYED UNDER PARCELS 1
AND 2 DESCRIBED ABOVE.

PARCEL 4B:

AN EASEMENT OVER A STRIP OF LAND 2 FEET IN WIDTH IN SAID LOTS 31 AND 32 IN BLOCK 32 OF LA
JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING
TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY OF
SAN DIEGO COUNTY, MARCH 22, 1887, THE CENTER LINE OF SAID STRIP BEING THE EXISTING SEWER
LATERALS AS LOCATED ON SAID LOTS, ON MARCH 8, 1949.

**EXHIBIT A**
(Continued)

EXCEPTING THE PORTIONS THEREOF WHICH LINE WITHIN PARCELS 1 AND 2 DESCRIBED ABOVE.

APN:  350-312-09-00, 350-312-10-00

This is a true certified copy of the record
if it bears the seal, imprinted in purple ink

ERNEST J. DRONENBURG JR.
Assessor/Recorder/Clerk
San Diego County, California

Deputy

FEB 0 8 2019

**Marlena Johan Silva**

# Exhibit 6

Complaint

**Fidelity National Title Insurance Company**

POLICY NO.: CA-FLVE-IMP-27307-1-17-00165714

# LOAN POLICY OF TITLE INSURANCE

*Issued by*

### Fidelity National Title Insurance Company

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii) failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a) the occupancy, use, or enjoyment of the Land;

    (b) the character, dimensions, or location of any improvement erected on the Land;

ALTA Loan Policy (6/17/06)

27307 (6/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Order No.: **00165714-994-VNO-CH**                                      Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

    (c)     the subdivision of land; or

    (d)    environmental protection

if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.    An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7.    The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8.    Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9.    The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage

    (a)    forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

    (b)    failure of any person or Entity to have authorized a transfer or conveyance;

    (c)    the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

    (d)    failure to perform those acts necessary to create a document by electronic means authorized by law;

    (e)    a document executed under a falsified, expired, or otherwise invalid power of attorney;

    (f)    a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

    (g)    a defective judicial or administrative proceeding.

10.    The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11.    The lack of priority of the lien of the Insured Mortgage upon the Title

    (a)    as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

        (i)    contracted for or commenced on or before Date of Policy; or

        (ii)    contracted for, commenced or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

    (b)    over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12.    The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13.    The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

    (a)    resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

    (b)    because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

        (i)    to be timely, or

27307 (6/06)                                                                                        ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Order No.: **00165714-994-VNO-CH**                                                    Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

       (ii)     to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14.     Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.

**Fidelity National Title Insurance Company**
Countersigned by:

*Cindy Fried*
_____
Authorized Signature

By: _____
      Randy Quirk, President
Attest: _____
      Michael Gravelle, Secretary

27307 (6/06)                                                                                    ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Order No.: **00165714-994-VNO-CH**                                    Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)   the character, dimensions, or location of any improvement erected on the Land;
   (iii)   the subdivision of land; or
   (iv)   environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
     (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
   (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c)   resulting in no loss or damage to the Insured Claimant;
   (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a)   a fraudulent conveyance or fraudulent transfer, or
   (b)   a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a)   "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.

(b)   "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c)   "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d)   "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

(i)   the amount of the principal disbursed as of Date of Policy;

(ii)   the amount of the principal disbursed subsequent to Date of Policy;

(iii)   the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv)   interest on the loan;

(v)   the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi)   the expenses of foreclosure and any other costs of enforcement;

(vii)   the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii)   the amounts to pay taxes and insurance; and

(ix)   the reasonable amounts expended to prevent deterioration of improvements; but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e)   "Insured": The Insured named in Schedule A.

(i)   The term "Insured" also includes

(A)   the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B)   the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

(C)   successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(D)   successors to an Insured by its conversion to another kind of Entity;

(E)   a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1)   if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2)   if the grantee wholly owns the named Insured, or

(3)   if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F)   any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii)   With respect to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f)   "Insured Claimant": An Insured claiming loss or damage.

(g)   "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(h)   "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i)   "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j)   "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k)   "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in

27307 (6/06)                                                                                    ALTA Loan Policy (6/17/06)

 

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Order No.: **00165714-994-VNO-CH**                    Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A.

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2.  CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4.  PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5.  DEFENSE AND PROSECUTION OF ACTIONS**

(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c)  Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

**6.  DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or

governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**7.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)  **To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i)  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii)  To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)  **To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.**

(i)  to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**8.  DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)  The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)  the Amount of Insurance,
(ii)  the Indebtedness,
(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

27307 (6/06)                                                                                              ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.




Order No.: **00165714-994-VNO-CH**

Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

**(a) The Company's Right to Recover**

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

**(b) The Insured's Rights and Limitations**

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

**(c) The Company's Rights Against Noninsured Obligors**

The Company's right of subrogation includes the Insured's rights against noninsured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

**13. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons.

Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim

arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**15. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at Fidelity National Title Insurance Company, Attn: Claims Department, Post Office Box 45023, Jacksonville, Florida 32232-5023.

27307 (6/06)

ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Order No.: **00165714-994-VNO-CH**                          Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

## Fidelity National Title Insurance Company

### SCHEDULE A

Name and Address of Title Insurance Company:       **Fidelity National Title Company**
                                                   **5000 Van Nuys Blvd., Suite 500**
                                                   **Sherman Oaks, CA 91403**

Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**                     Loan No.: **10157**

Address Reference:       **7740-7746 Eads Avenue, La Jolla, CA 92037**

Amount of Insurance: **$3,160,000.00**                            Premium: **$3,410.00**

Date of Policy: **July 7, 2017 at 8:00 AM**

1.      Name of Insured:

   **Jeffrey Myers and Kathleen Myers, and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015, and Steven M. Cobin and Susan L. Cobin, Trustees of the Cobin Family Trust Dated March, 9th 1984, and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, and Fasack Investments L.L.C., and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, and Vickie McCarty, and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, and Dolores Thompson, and Kimberly Gill Rabinoff**

2.      The estate or interest in the Land that is encumbered by the Insured Mortgage is:

   **A Fee as to Parcel(s) 1A, 1B, and 2B; An Easement(s) more fully described below as to Parcel 2A, 3A, 3B, and 4B.**

3.      Title is vested in:

   **Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust no. 1989-1 dated January 26, 1989, as to Parcels 1A, 1B, and 2B**

4.      The Insured Mortgage and its assignments, if any, are described as follows:

   DEED OF TRUST given to secure the original amount shown below, and any other amount payable under the terms thereof.

   Amount:              $3,160,000.00
   Dated:               June 27, 2017
   Trustor/Grantor:     Dale H. Sundby and Edith Littlefield Sundby, Trustees of Declaration of Trust, Trust no. 1989-1 dated January 26, 1989, as to Parcels 1A, 1B, and 2B
   Trustee:             Platinum Loan Servicing, Inc.
   Beneficiary:         Jeffrey Myers and Kathleen Myers, husband and wife as joint tenants as to an undivided 44.148% interest and Andres Salsido, Trustee of the Andres Salisido Declaration of Trust dated May 27, 2015, as to an undivided 18.987% and Steven M. Cobin and Susan L. Cobin, Trustees of the Cobin Family Trust Dated March, 9th 1984, as to an undivided 7.911% interest and Equity Trust Company Custodian FBO Steven M. Cobin Traditional IRA, as to an undivided 7.911% interest and Fasack Investments L.L.C., as to an undivided 7.437% interest and Benning Management Group 401(K) Profit Sharing Plan as to an undivided 3.797% interest and Christopher Myers, a single man as to an undivided 3.797% interest and Vickie McCarty, an unmarried woman, as to an undivided

### THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED

27307A (6/06)                                                                                        1
ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



Order No.: **00165714-994-VNO-CH**                    Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

## SCHEDULE A
### (Continued)

1.582% interest and Todd B. Cobin and Barbara A. Cobin, Trustees of the Cobin Family Living Trust U/A March 4, 2016, as to an undivided 1.582% interest and Dolores Thompson, a single woman, as to an undivided 1.582% interest and Kimberly Gill Rabinoff, an unmarried woman as to an undivided 1.266% interest

Loan No.:              10157
Recording Date:        July 7, 2017
Recording No:          20170306159, Official Records

5.    The Land referred to in this policy is described as follows:

**See Exhibit A attached hereto and made a part hereof.**

27307A (6/06)
ALTA Loan Policy (6/17/06)

2

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Order No.: **00165714-994-VNO-CH**                                    Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

# SCHEDULE A
## (Continued)

6.     This policy incorporates by reference those ALTA and/or CLTA endorsements selected below:

| Endorsement | Fee |
|---|---|
| ☐ CLTA 100-06 | $0.00 |
| ☐ ALTA 4-06 (Condominium) | $0.00 |
| ☐ ALTA 5-06 (Planned Unit Development) | $0.00 |
| ☐ ALTA 6-06 (Variable Rate) | $0.00 |
| ☐ ALTA 6.2-06 (Variable Rate – Negative Amortization) | $0.00 |
| ☐ ALTA 8.1-06 (Environmental Protection Lien) Paragraph b refers to the following state statute(s): NONE | $25.00 |
| ☐ ALTA 9-06 (Restrictions, Encroachments, Minerals) | $0.00 |
| ☐ ALTA 13.1-06 (Leasehold Loan) | $0.00 |
| ☐ ALTA 14-06 (Future Advance – Priority) | $0.00 |
| ☐ ALTA 14.1-06 (Future Advance – Knowledge) | $0.00 |
| ☐ ALTA 14.3-06 (Future Advance – Reverse Mortgage) | $50.00 |
| ☐ ALTA 22-06 (Location) The type of improvement is a Multiple Family Residence, and the street address is as shown above. | $0.00 |

27307A (6/06)
ALTA Loan Policy (6/17/06)

3

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


Order No.:  **00165714-994-VNO-CH**                                    Policy No.:  **CA-FLVE-IMP-27307-1-17-00165714**

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LA JOLLA, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1A: TAX 09

ALL THAT PORTION OF LOTS 31 AND 32, IN BOOK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, MARCH 22, 1887, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF SAID LOT 31 DISTANT THEREON SOUTH 74° 33' 30" WEST, 92.88 FEET FROM THE SOUTHEASTERLY CORNER OF SAID LOT; THENCE SOUTH 74° 33' 30" WEST ALONG SAID SOUTHERLY LINE, 47.36 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE NORTH 15° 23' 30" WEST ALONG THE WESTERLY LINE OF SAID LOT 31, A DISTANCE OF 22.04 FEET TO A POINT DISTANT SOUTH 15° 23' 30" EAST 28.0 FEET FROM THE NORTHWESTERLY CORNER OF SAID LOT 32; THENCE NORTH 74° 33' 45" EAST, 24.36 FEET; THENCE NORTH 44° 33' 45" 26.55 FEET TO A POINT BEARING NORTH 15° 25' WEST FROM THE POINT OF BEGINNING THENCE SOUTH 15° 25' EAST PARALLEL WITH THE EASTERLY LINE OF SAID LOTS, 35.31 FEET TO THE POINT OF BEGINNING.

PARCEL 2A:

ALSO AN EASEMENT AND RIGHT OF WAY FOR THE PURPOSES OF CONSTRUCTING AND MAINTENANCE OF A WATER SERVICE PIPE LINE AND OTHER UTILITIES AND ACROSS THE SOUTHERLY 2 FEET OF THE EASTERLY 92.88 FEET OF SAID LOT 31.

EXCEPTING FROM THE ABOVE DESCRIBED PROPERTY AN EASEMENT FOR RIGHT OF INGRESS AND EGRESS OVER THAT PORTION OF THE NORTHWESTERLY 2.5 FEET HEREOF, BEING IN SAID LOT 32 SAID STRIP EXTENDING SOUTHWESTERLY FROM THE EASTERLY LINE OF SAID PROPERTY TO A TERMINATION IN THE SOUTHERLY LINE OF SAID LOT 32.

PARCEL 3A:

GRANTING ALSO AN EASEMENT FOR RIGHT OF INGRESS AND EGRESS OVER AND ACROSS A STRIP OF LAND 5 FEET WIDE, BEING 2.5 FEET ON EACH SIDE OF A CENTER LINE DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 32; THENCE SOUTH 74° 33' 45" WEST ALONG THE SOUTHERLY LINE OF SAID LOT 32 A DISTANCE OF 60 FEET; THENCE NORTH 60° 26' 15" WEST 19 FEET; THENCE SOUTH 74° 33' 45" WEST 14 FEET; THENCE SOUTH 44° 33' 45" WEST TO THE SOUTHERLY LINE OF SAID LOT 32, SAID EASEMENT TERMINATING IN THE SOUTHERLY LINE OF SAID LOT 32.

EXCEPTING THEREFROM THAT PORTION INCLUDED WITHIN THE 2.5 FEET STRIP RESERVED AS DESCRIBED ABOVE.

EXCEPTING AND GRANTING AN EASEMENT TWO FEET IN WIDTH, 1 FEET ON EACH SIDE OF THE EXISTING SEWER LATERALS AS NOW LOCATED ON SAID LOTS 31 AND 32 TO SERVE THE EXISTING BUILDINGS.

PARCEL 1B: TAX 10

27307A (6/06)                                                                                          4
ALTA Loan Policy (6/17/06)

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Order No.: 00165714-994-VNO-CH

Policy No.: CA-FLVE-IMP-27307-1-17-00165714

# EXHIBIT A
### (Continued)

THAT PORTION OF LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 22, 1887, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 31; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 31, SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00 FEET; THENCE SOUTH 74° 33' 45" WEST 14.00 FEET; THENCE SOUTH 44° 33' 45" WEST 6.28 FEET TO THE MOST NORTHERLY CORNER OF THAT PARCEL OF LAND DESCRIBED IN DEED TO IRENE B. O'BRIEN, RECORDED MARCH 8, 1949 AS DOCUMENT NO. 20514, IN BOOK 3133, PAGE 175 OF OFFICIAL RECORDS; THENCE ALONG THE EASTERLY LINE OF SAID LAND SOUTH 15° 25' EAST 35.31 FEET TO THE SOUTHERLY LINE OF SAID LOT 31; THENCE ALONG SAID SOUTHERLY LINE NORTH 74° 33' 30" EAST 92.88 FEET TO THE SOUTHEASTERLY CORNER OF SAID LOT 31; THENCE ALONG THE EASTERLY LINE OF SAID LOT NORTH 15° 25' WEST 25.01 FEET TO THE POINT OF BEGINNING.

PARCEL 2B: TAX 10

THAT PORTION OF LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 31; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 31, SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00 FEET; THENCE SOUTH 74° 33' 45" WEST 14.00 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 44° 33' 45" WEST 6.28 FEET TO THE MOST NORTHERLY CORNER OF THAT PARCEL OF LAND DESCRIBED IN DEED TO IRENE B. O'BRIEN RECORDED MARCH 8, 1949 AS DOCUMENT NO. 20514 IN BOOK 3133, PAGE 175 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHWESTERLY AND NORTHERLY BOUNDARY OF SAID O'BRIEN'S LAND SOUTH 44° 33' 45" WEST 26.55 FEET AND SOUTH 74° 33' 45" WEST, 24.36 FEET TO THE WESTERLY LINE OF SAID LOT 31; THENCE ALONG SAID WESTERLY LOT LINE AND THE WESTERLY LINE OF SAID LOT 32; NORTH 15° 23' 30" WEST 28.00 FEET TO THE NORTHWESTERLY CORNER OF LOT 32; THENCE ALONG THE NORTHERLY LINE OF SAID LOT 32 NORTH 74° 34' EAST 52.78 FEET TO A LINE WHICH BEARS NORTH 15° 25' WEST FROM THE TRUE POINT OF BEGINNING; THENCE SOUTH 15° 25' EAST 11.58 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3B:

AN EASEMENT FOR INGRESS AND EGRESS TO BE USED IN COMMON WITH OTHERS OVER A STRIP OF LAND 5 FEET WIDE IN LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 22, 1887, THE CENTER LINE OF SAID STRIP BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 32; THENCE ALONG THE COMMON LINE BETWEEN SAID LOTS 31 AND 32 SOUTH 74° 33' 45" WEST 60.00 FEET; THENCE NORTH 60° 26' 15" WEST 19.00 FEET; THENCE SOUTH 74° 33' 45" WEST 14.00 FEET; THENCE SOUTH 44° 33' 45" WEST TO THE SOUTHERLY LINE OF SAID LOT 32, SAID STRIP BEGINNING IN THE EASTERLY LINE OF SAID LOTS 31 AND 32 AND ENDING IN SAID SOUTHERLY LINE OF LOT 32.

EXCEPTING FROM SAID STRIP THAT PORTION LYING WITHIN THE LAND CONVEYED UNDER PARCELS 1 AND 2 DESCRIBED ABOVE.

27307A (6/06)
ALTA Loan Policy (6/17/06)

5

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Order No.: **00165714-994-VNO-CH**

Policy No.: **CA-FLVE-IMP-27307-1-17-00165714**

## EXHIBIT A
### (Continued)

PARCEL 4B:

AN EASEMENT OVER A STRIP OF LAND 2 FEET IN WIDTH IN SAID LOTS 31 AND 32 IN BLOCK 32 OF LA JOLLA PARK, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 352, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY OF SAN DIEGO COUNTY, MARCH 22, 1887, THE CENTER LINE OF SAID STRIP BEING THE EXISTING SEWER LATERALS AS LOCATED ON SAID LOTS, ON MARCH 8, 1949.

EXCEPTING THE PORTIONS THEREOF WHICH LINE WITHIN PARCELS 1 AND 2 DESCRIBED ABOVE.

APN: 350-312-09-00, 350-312-10-00

27307A (6/06)
ALTA Loan Policy (6/17/06)

6

**Copyright American Land Title Association. All rights reserved.** The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION